FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 08, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RUBY O. S.,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:18-CV-03108-LRS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 16).

## JURISDICTION

Ruby O. S., Plaintiff, applied for Title II Social Security Disability Insurance benefits (SSDI) and Title XVI Supplemental Security Income benefits (SSI) on January 26, 2015. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on March 9, 2017, before Administrative Law Judge (ALJ) Tom L. Morris. Plaintiff testified at the hearing, as did Vocational Expert (VE) Kimberly Mullinax. On June 9, 2017, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has a 9th grade education and past relevant work experience as a cleaner/ housekeeper. She alleges disability since January 15, 2015, on which date she was 46 years old. Plaintiff's date last insured for Title II SSDI benefits is December 31, 2017.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 2**

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) conducting an improper step two analysis; 2) improperly assessing the medical opinion evidence; 3) failing to provide specific, clear and convincing reasons for discounting Plaintiff's testimony regarding her symptoms and limitations; 4) improperly evaluating lay witness statements; and 5) failing to conduct an adequate analysis at step five.

## DISCUSSION

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) and § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has the following "severe" medically determinable impairments: spinal disorder; hip disorder; affective disorder; and anxiety disorder;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the Residual Functional Capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that her standing/walking is limited to a total of five hours in an eight hour workday and she requires a sit/stand option; she cannot climb ladders, ropes, or scaffolding; she can frequently balance, stoop, kneel crouch and crawl; she should avoid concentrated exposure to hazards; she is capable of simple routine tasks, with customary breaks and lunch; she can have frequent contact with five or fewer coworkers; her work tasks should not require collaborative work efforts more than twice a day, lasting ten minutes or less per occurrence; there should be no contact with the general public for work tasks; there can be frequent changes in the work environment; she will be off-task up to ten percent of an eight hour workday; and she is not able to perform at a production rate pace, but can perform goal oriented work;

4) Plaintiff's RFC does not allow her to perform her past relevant work, but she is capable of performing other jobs existing in significant numbers in the national economy as testified to by the VE, including document preparer and escort vehicle driver.

Accordingly, the ALJ concluded that Plaintiff is not disabled.

**SEVERE IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508 and 416.908.

Step two is a *de minimis* inquiry designed to weed out non-meritorious claims at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987) ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005), citing S.S.R. No. 85-28 (1985). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Id*.

Plaintiff contends the ALJ erred in failing to include the following as "severe" impairments: unspecified neurological movement disorder, characterized by multiple

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

white matter lesions of the frontal and parietal lobes of the brain, with plaquing in bulb regions extending into internal carotid arteries bilaterally; right foot drop, reduced dorsiflexion strength, distal leg weakness, and hyperreflexia, contributing to additional exertional and postural limitations; fibromyalgia syndrome, contributing to pain and weakness; and hyperparathyroidism and hypothyroidism due to Hashimoto's thyroiditis.

The record contains no firm diagnosis of fibromyalgia by any medical practitioner. (AR at pp. 526, 528, 872, 926 and 959). Furthermore, in April 2016, Sindhu R. Srivatsal, M.D., opined that Plaintiff had "foot posturing, which appears like a foot drop, but I do not think there is true weakness as with effort her strength actually improves." (AR at p. 609). In May 2015, Shannon Grosdidier, M.D., noted that Plaintiff's foot drop had improved with time. (AR at p. 531).

The record does, however, contain a diagnosis of white matter disease.[1] Paul Schmitt, M.D., Plaintiff's treating family practitioner at Kittitas Valley Healthcare, diagnosed white matter disease in December 2015. (AR at p. 821). An MRI of Plaintiff's brain conducted earlier in 2015 "was abnormal with multiple white matter lesions." (AR at p. 531). Another MRI conducted in May 2016 revealed "[n]umerous areas of white matter signal abnormality." (AR at p. 62).

---

[1] White matter disease is the wearing away of tissue in the largest and deepest part of the brain. The disease affects the nerves that link the parts of brain to each other and to the spinal cord. White matter disease causes these areas to decline in functionality. Persons with the disease have increasing difficulty with the ability to think and progressively worsening issues with walking and balance. https://www.webmd.com/brain/white-matter-disease#1

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

In July 2017, Dr. Srivatsal noted that Plaintiff had a multiple sclerosis (MS) evaluation for an abnormal OCT (Optical Coherence Tomography) "and white matter changes." (AR at p. 14).[2] He suggested repeating the brain imaging "as she did have white matter disease" and he wanted to look for "interval progression." (AR at p. 15). Another MRI was conducted in 2017. Jeffrey Ventre, M.D., observed that Plaintiff's "brain MRI findings [were] suspicious for MS and described as progressive when comparing the 2016 to the 2017 MRI." (AR at p. 8). On October 31, 2017, Dr. Srivatsal noted that "[b]rain MRI over time has shown accumulating white matter disease, but the white matter changes are nonspecific." (AR at p. 25).[3]

---

[2] White matter changes can be an indicator of multiple sclerosis. https://my.clevelandclinic.org/health/articles/14315-multiple-sclerosis-q--a

[3] The records from July 2017 onwards were obviously not available to the ALJ when he made his decision on June 9, 2017. These records were submitted to the Appeals Council which found they either did not show a reasonable probability they would change the outcome of the decision or did not relate to the period at issue, that being prior to June 9, 2017. (AR at p. 2).

Because these records were examined by the Appeals Council and made part of the administrative record, this court is entitled to review them to determine whether, in light of the record as a whole, the ALJ's decision is supported by substantial evidence and free of legal error. *Taylor v. Commissioner of Soc. Sec.*

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

The court cannot conclude that the limitations arising from Plaintiff's white matter disease are already accounted for in the limitations found by the ALJ as arising from the impairments which he found to be "severe."[4] And to the extent there may be some overlap in the limitations, there is a legitimate question whether those limitations, in particular those related to mental functioning, should be considered more "severe" by virtue of being related to an organic brain disorder versus a mental illness. This is perhaps best illustrated by the consultative psychological examination performed by Greg D. Sawyer, M.D., Ph.D., on March 11, 2015, discussed below.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other

---

*Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011), citing *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

[4] See *Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a); 416.913(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(d); 416.913(d). In order to discount the opinion of a non-acceptable medical source, the ALJ must offer germane reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).[5]

At her examination by Dr. Sawyer on March 11, 2015, Plaintiff informed the doctor she last worked for herself as a cleaning person for a couple of years, but could not do it anymore because of her anxiety and body pain. (AR at p. 494). Dr. Sawyer noted, however, that Plaintiff did not provide any symptoms of anxiety. (AR at p. 494). He diagnosed Plaintiff with "major depressive episode, mild to moderate, in partial remission" and indicated that consideration should be given to Plaintiff suffering from "brain damage secondary to methamphetamine use or other polysubstance abuse trauma." (AR at p. 496). Dr. Sawyer saw no evidence that Plaintiff was exaggerating symptoms or history, and no evidence of immaturity or childishness. (AR at p. 495). According to the doctor:

> This claimant is very difficult to describe. As we go through the diagnostic criteria for depression, she seems to mildly to moderately fit most of the criteria. She does not fulfill criteria for posttraumatic stress disorder, in that she does not have flashbacks and/or nightmares, but she certainly has had some significant traumas. I do not see any evidence for multiple personality, but that would not be unusual if,

---

[5] For claims filed on or after March 27, 2017, physician assistants are now considered "acceptable medical sources." 82 Fed. Reg. 5844 (Jan. 18, 2017).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

>       in fact, she suffers from that disorder, as the whole disorder itself is designed to disallow people getting to know her. Bipolar disorder has already been ruled out.
>
>       Frankly, what it seems like is that this claimant has a very difficult time thinking and has an extraordinarily difficult time remembering certain parts of her life, and it looks very much like someone who has been damaged by alcohol or drugs and is attempting to look as "normal" as they can, while frankly their brain is not working the way it used to work. I suspect that we are going to see very little change in the next 12 months, and improvement for her would be unusual.

(AR at pp. 496-97).

Dr. Sawyer opined that Plaintiff would not have difficulty performing simple and repetitive tasks, but would have difficulty with all of the following: performing complicated tasks; accepting instructions from supervisors; attempting to understand, carry out and remember complex and one or two-step instructions; attempting to maintain effective social interactions with supervisors, coworkers and the public; attempting to perform work activities on a consistent basis without special or additional instruction; sustaining concentration and persistence in work-related activity at a reasonable pace; attempting to maintain regular attendance in the workplace; attempting to complete a normal workday or workweek without interruptions; and attempting to deal with the usual stresses encountered in the workplace. (AR at pp. 497-98).[6]

---

[6] Among the symptoms of white matter disease are trouble learning or remembering new things; a hard time with problem solving; slowed thinking; and depression. It happens in older people and may be worse for women with a history of stroke. It is a progressive disease and can worsen.

https://www.webmd.com/brain/white-matter-disease#1

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

The ALJ gave minimal weight to Dr. Sawyer's opinion, choosing instead to give significant weight to the opinions of the state agency psychological consultants who reviewed the record on March 24, 2015, Thomas Clifford, Ph.D., and in July 2015, Eugene Kester, M.D. (AR at p. 50). According to Dr. Clifford, Dr. Sawyer's opinion relied heavily on the subjective report of symptoms and limitations provided by Plaintiff and the "totality of the evidence" did not support his opinion. (AR at p. 156). Furthermore, according to Dr. Clifford, Dr. Sawyer's opinion was "an overestimate of the severity of the individual's restrictions/limitations and based only on a snapshot of the individual's functioning." (*Id.*). Dr. Kester echoed this assessment in the reconsideration of Plaintiff's claim. (AR at p. 186).

The ALJ gave short shrift to Dr. Sawyer's suggestion of an organic brain disease, notwithstanding that this was subsequently borne out by the diagnosis of white matter disease. It is apparent the ALJ gave minimal weight to Dr. Sawyer's assessment because the ALJ focused on evidence from May 2014 to September 2016 showing a lack of anxiety and depression, instead of symptoms attributable to an organic brain disease. (AR at pp. 49-50). This was not Dr. Sawyer's concern as the Plaintiff did not provide any symptoms of anxiety and he found that while Plaintiff had experienced a major depressive episode, it was mild to moderate, and in partial remission. Furthermore, in March 2015 when Drs. Sawyer and Clifford offered their opinions, Plaintiff had not yet been diagnosed with white matter disease as it appears MRIs of the Plaintiff's brain had yet to be performed. In light of the foregoing, the court must conclude the ALJ did not offer specific and legitimate reasons for giving only minimal weight to the opinion of Dr. Sawyer.

On December 28, 2015, Dr. Schmitt completed a Washington State Department Of Social & Health Services (DSHS) "Physical Functional Evaluation" form in which he opined Plaintiff was "severely limited" in that she was unable to meet the demands of even sedentary work, defined as the ability to lift a maximum

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

of 10 pounds, frequently lift or carry light weight articles, and ability to walk or stand for only brief periods. (AR at p. 594). He opined this limitation was "permanent." (*Id*.). On the form, Dr. Schmitt provided two diagnoses- right-sided weakness due to L5 radiculopathy and stroke with right sided upper extremity weakness- which he indicated were of "moderate" severity in that they cause "[s]ignificant interference with the ability to perform one or more basic work-related activities." (AR at p. 593).

As the ALJ noted, there is seeming inconsistency between rating the severity of Plaintiff's impairments as "moderate," yet opining that Plaintiff could not meet even the demands of sedentary work. Dr. Schmitt indicated Plaintiff was unable to stand for more than thirty (30) minutes and unable to walk more than a block. (AR at p. 593). These limitations are not inconsistent with the requirements of sedentary work which involves primarily sitting and the ability to walk or stand for only brief periods. (AR at p. 594).

In a letter to the Plaintiff dated June 21, 2016, Dr. Schmitt noted the following in regard to Plaintiff's white matter disease:

> You have developed a condition that is still being investigated. Initially[,] we thought this was multiple sclerosis, but testing has ruled this out. You are currently in the process of working up a rheumatologic condition. The possibilities include lupus erythematosis. You also have chronic pain, and bipolar disorder, both of which are stable.
>
> At this time you are unable to work, due to symptoms of your as yet undiagnosed rheumatologic condition. This disability is expected to continue for at least 6 months and may continue for the rest of your life, unless there is a treatment identified.

(AR at p. 616).

PA-C Chelsea Newman, who worked alongside Dr. Schmitt at Kittitas Valley Healthcare, wrote a letter to Plaintiff in July 2016, that essentially echoed what Dr. Schmitt told Plaintiff in his June 2016 letter. Newman told Plaintiff:

> You do have an undiagnosed condition that is causing you significant discomfort and at this time you are unable to

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

> work. It is questionable whether or not you will be unable to return to work in the future.

(AR at p. 806).[7]

The ALJ has a basic duty to inform himself about facts relevant to his decision. *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1, 103 S.Ct. 1952 (1983). The ALJ's duty to develop the record exists even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The duty is triggered by ambiguous or inadequate evidence in the record and a specific finding of ambiguity or inadequacy by the ALJ is not necessary. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Considering Dr. Sawyer's assessment along with Dr. Schmitt's subsequent diagnosis of white matter disease, the ALJ was obliged to develop the evidence further as to the severity of limitations attributable to Plaintiff's organic brain disease.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

---

[7] While Plaintiff's white matter disease had clearly been diagnosed, what was unclear to Dr. Schmitt and PA-C Newman was whether that disease portended an additional and perhaps even more serious condition, such as MS or lupus.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id.*, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

The ALJ erred in failing to find that Plaintiff suffers from "severe" medically-determinable white matter disease. In view, however, of the fact that Dr. Sawyer did not specify the degree of difficulty the Plaintiff would experience regarding her ability to cognitively perform in the workplace, and the fact that Dr. Schmitt and PA-

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

C Newman were equivocal about if and when Plaintiff might be able to return to work, this court concludes a remand to the ALJ for further development of the record, including consideration of the medical records submitted to the Appeals Council, is warranted. The Plaintiff's testimony, and the testimony of her lay witnesses, needs to be reassessed, and the medical opinions re-evaluated in light of the fact that Plaintiff suffers from a "severe" organic brain disease. [8]

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 16) is **DENIED**. Pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this order.

---

[8] The Commissioner's brief contends the record contains references to Plaintiff continuing to work as a full-time housekeeper after her alleged onset date of disability (ECF No. 16 at pp. 5-6), but in his decision, the ALJ asserted only that Plaintiff's symptoms were concurrent with her past work that preceded the alleged onset date of disability. (AR at pp. 46-48). Plaintiff testified at the hearing that she had not worked as a housekeeper since January 2015. (AR at p. 107). The court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. *Garrison*, 759 F.3d at 1010.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and **close the case**.

**DATED** this   8th   day of May, 2019.

*Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge